UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-227-GWU

THEODORE R. KALEN,                                                             PLAINTIFF,

VS.                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Theodore R. Kalen, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of bilateral shoulder degenerative joint disease.  (Tr. 11).  He also noted that the plaintiff was status post coronary artery bypass grafting in October, 2007 and status post lumbar laminectomy, without indicating whether these were severe impairments.[1]  Nevertheless, the ALJ

---

[1] The ALJ specifically noted six non-severe impairments: diabetes mellitus, peripheral neuropathy, obstructive sleep apnea, obesity, depression, and a mood disorder.  (Tr. 11).

determined that the plaintiff retained the residual functional capacity to perform a full range of "sedentary" level exertion, and proceeded to apply Rule 201.27 of the Commissioner's Medical-Vocational Guidelines (the "grids"), applicable to a person of Mr. Kalen's age, education, and work experience, which directs a conclusion of "not disabled." (Tr. 13-15). The Appeals Council declined to review, and this action followed.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff has several specific objections to the ALJ's decision. First, he notes that ALJ Charles J. Arnold conducted the administrative hearing (Tr. 17) but the decision was signed by ALJ Don C. Paris "for Charles J. Arnold" (Tr. 16). The plaintiff cites the defendant's Hearing, Appeals and Litigation Law Manual, or HALLEX, as providing certain procedures which an ALJ is required to follow before issuing a decision in a case in which he did not conduct the hearing. See HALLEX, § I-2-8-40. The defendant concedes that the procedures were apparently not followed in the present case, but argues that there was no prejudice to the plaintiff. The undersigned has previously determined that a violation of HALLEX is not grounds for a remand unless the plaintiff was prejudiced thereby. Caudill v. Astrue, 2010 WL 148806 (E.D. Ky. January 14, 2010). In the present case, the evidence

suggests that the plaintiff was prejudiced by the failure to follow procedure, as outlined below.

The plaintiff notes that the ALJ who authored the administrative decision determined that Mr. Kalen had no severe mental impairment, indicating, among other factors, that he had been prescribed the medication Wellbutrin by the Veteran's Administration, but had not sought treatment such as counseling for his psychiatric complaints. (Tr. 12). The ALJ also indicated that "state psychological examiners reviewed the evidence and opined that his mental impairments were less than severe, and there are no conflicting opinions from treating physicians." (Tr. 13). In fact, records from the Veteran's Administration Medical Center (VAMC) show that the plaintiff did seek treatment, complaining of depression, on September 11, 2007 and indicating that he needed a change in his existing medication. (Tr. 630). He was seen three days later by Dr. Justin Case who indicated that his "main concern" was a poor mood and depression, that the plaintiff had doubled his dosage of Paxil five weeks earlier with no improvement, and concluded that the plaintiff needed a referral for a psychiatric evaluation. (Tr. 622-3). A screening for depression was positive. (Tr. 626). Mr. Kalen had a psychiatry consultation on October 15, 2007, and described progressively worsening anxiety and depression, frustration, and frequently losing his temper for no particular reason. (Tr. 613). At the time, he was given a diagnosis of a mood disorder, with a Global Assessment

of Functioning (GAF) score of 54, reflecting moderate symptoms or moderate difficulty in social, occupational, and school functioning per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. (Tr. 614-16). His medication was changed to Wellbutrin, and he was scheduled for a follow-up at the VAMC's mental health clinic. (Tr. 616).

The next week, Mr. Kalen underwent coronary artery bypass surgery. (Tr. 334). His follow-up with the mental health clinic took place on February 11, 2008, at which time he was seen by Matthew J. Neltner, a resident physician. (Tr. 552). Again, the plaintiff described a variety of issues with depression, anxiety, and frustration, and felt that although Wellbutrin was helping to level out his mood, he would still become very angry over small events. (Tr. 549). There were also complaints of hopelessness and poor concentration. (Id.). Dr. Neltner noted mild psychomotor retardation and a dysphoric/stoic affect, and diagnosed, among other things, chronic major depressive disorder. (Tr. 550-1). Mr. Kalen's GAF score was given as 55, virtually the same as at the previous examination. Dr. Neltner planned a change to "sustained action" Wellbutrin at the same dose and to give the phone number for a Comprehensive Care Clinic as well as an appointment for anger management classes. He discussed the case with an attending psychiatrist, Dr. James Fetter, who concurred with the plan. (Tr. 551-2).

While a non-examining (not "examining") state agency psychologist did review the record as of April 12, 2007 and gave the opinion that the plaintiff did not have a "severe" mental impairment (Tr. 234), it is clear that she could not have reviewed all of the evidence of his recent treatment.  While the additional records did not necessarily establish specific mental restrictions, they did indicate that the plaintiff was having continuing difficulties which were sustained over a period of several months.  Not only did no state agency source review the evidence, it is not clear from the administrative decision that the evidence was reviewed by either of the ALJs who might have been responsible for the case, since it was not mentioned. Moreover, as previously noted, the decision erroneously claimed that the plaintiff did not seek treatment.  Therefore, the court concludes that there is sufficient evidence of potential prejudice to the plaintiff to justify a remand.[2]

The plaintiff also criticizes the decision maker's conclusion that his pain was not credible, citing, in part, the fact that he took only over-the-counter Tylenol. (Tr. 14).  The type, dosage, and side effects of medications are factors to be considered in assessing a claimant's pain.  20 C.F.R. § 404.1529(c)(3)(iv).  As the plaintiff notes, he testified at the administrative hearing that he took Lortab for his right

---

[2] For the sake of completeness, it should be added that the Sixth Circuit Court of Appeals has been critical of using the failure of a mentally troubled individual to seek treatment as a factor in assessing his credibility.  <u>Blankenship v. Bowen</u>, 874 F.2d 1116, (6th Cir. 1989).  In the present case, the decision maker was simply incorrect factually on this point.

shoulder, low back, and knee pain (Tr. 28) and VAMC records bear out his contention that he was being prescribed this medication regularly (Tr. 544, 579, 585, 614, 623). This is also a factor which should be considered on remand.

For the reasons cited, the court concludes that the administrative decision is not supported by substantial evidence, and will be remanded for further consideration.

This the 11th day of May, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**